# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| ANGEL M. BOYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-131-TLS |
| | ) | |
| ACTING COMMISSIONER OF THE | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

The Plaintiff, Angel M. Boyles, seeks review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income. The Plaintiff claims that the Administrative Law Judge (ALJ) committed error when she did not develop a full and fair record for an unrepresented claimant, did not give controlling weight to the combined opinion of her treating psychiatrist and psychologist, and did not incorporate limits for concentration, persistence, and pace as part of the Plaintiff's residual functional capacity.

For the reasons stated in this Opinion and Order, the Court finds that there exists a basis to remand for further review.

## BACKGROUND

In July 2013, the Plaintiff filed an application for supplemental security income under Title XVI, alleging an onset date of October 1, 2012. She claimed an inability to work due to deep vein thrombosis and pulmonary embolism. After her claim was denied initially, as well as upon reconsideration, the Plaintiff requested a hearing before an ALJ. On July 14, 2016, the Plaintiff participated in a video hearing before the ALJ. A vocational expert also testified. On

September 23, 2016, the ALJ issued a written decision, applying the well-known five-step sequential evaluation process. *See* 20 C.F.R. § 416.920(a).

At the first step, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since July 2013, the application date. At the second step, the ALJ determined that the Plaintiff's obesity, status-post deep venous thrombosis, and a history of pulmonary embolism, degenerative joint disease of the left knee, depression, post-traumatic stress disorder, borderline personality disorder, a mood disorder secondary to substance abuse, and cannabis dependence were severe impairments that significantly limited her ability to do basic work-related activities. The ALJ determined that the Plaintiff's history of gallstones did not cause more than minimal functional limitations. Additionally, her asthmatic bronchitis did not satisfy the durational requirements to be considered an impairment under the governing regulations.

At step three, the ALJ considered whether the Plaintiff's impairments, or combination of impairments, met or medically equaled the severity of one of the impairments listed by the Administration as being so severe that it presumptively precludes substantial gainful employment. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. The ALJ considered several listings related to the Plaintiff's left knee impairment, her history of venous thrombosis, and mental impairments, but concluded that the Plaintiff did not have any impairments, or combination of impairments, that met a listing.

Next, the ALJ was required, at step four, to determine the Plaintiff's residual functional capacity (RFC), which is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of her impairments. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The ALJ concluded that the Plaintiff had the RFC to perform

2

sedentary work as defined in 20 C.F.R. § 416.967(a), but modified to include additional exertional, postural, and environmental restrictions. The ALJ also included limitations to account for the Plaintiff's "moderate limitations in concentration, persistence, or pace and her subjective complaints of problems with her memory." (R. 34.) The RFC was stated as follows:

> After careful consideration of the entire record, I find that the claimant has the [RFC] to perform sedentary work as defined in 20 CFR 416.967(a) except she can lift and carry a maximum of 10 pounds occasionally, less than 10 pounds frequently; she can stand and/or walk for up to two hours in an eight-hour workday, and sit for up to six hours in an eight-hour workday. She cannot climb ladders, ropes, or scaffolds, and cannot crawl; but she can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, and crouch, but with clarification that when crouching or squatting, she could not be required to be in a static position for more than 60 seconds. She requires the option to alternate between si[t]ting and standing that specifically allows her to change from sitting to standing, o[r] from standing to sitting, every 60 minutes. She cannot have exposure to unprotected heights or dangerous moving machinery, and she cannot use foot pedals. Finally, she can understand, remember, and perform simple tasks, make simple decisions, and adapt to routine changes in the workplace.

(R. 30.)

Although the ALJ found that the Plaintiff could not perform her past relevant work as a cashier, houseworker/general, or laborer/stores, she did conclude, at the final step of the evaluation, that the Plaintiff was capable of performing the representative occupations of order clerk, inspection, and parts polisher. Because the ALJ had determined that the Plaintiff could not perform the full range of sedentary work, the ALJ relied on the testimony of the vocational expert (VE) to determine whether jobs existed in significant numbers in the national economy for an individual with the Plaintiff's age (32), education (high school education), work experience (unskilled), and RFC. The ALJ concluded that a finding of not disabled was appropriate.

The Plaintiff sought review of the ALJ's decision by the Appeals Council. In February

2017, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. *Liskowitz v. Astrue*, 559 F.3d 736, 739 (7th Cir. 2009). The Plaintiff seeks judicial review under 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A claimant is disabled only if she shows an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). She has the burden of proving disability. *See id.* § 423(d)(5)(A). She must establish that her physical or mental impairments "are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

A court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

It is the duty of the ALJ to weigh the evidence, resolve material conflicts, make

4

independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In this substantial-evidence determination, the court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the court conducts a "critical review of the evidence" before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an inadequate discussion of the issues. *Id.*

The ALJ is not required to address every piece of evidence or testimony presented, but the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). If the Commissioner commits an error of law, remand is warranted without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

## ANALYSIS

### A. Duty to Develop a Full and Fair Record

The Plaintiff elected to represent herself at the hearing before the ALJ. She notes that, because she was not assisted by counsel, the ALJ had a duty to "scrupulously and conscientiously . . . probe into, inquire of, and explore for all the relevant facts." *Thompson v. Sullivan*, 933 F.2d 581, 585–86 (7th Cir. 1991) (first quoting *Smith v. Sec'y*, 587 F.2d 857, 860 (7th Cir. 1978), then citing *Gold v. Sec'y of Health, Educ. and Welfare*, 463 F.2d 38, 43 (2d Cir. 1972)). According to the Plaintiff, the ALJ failed to fulfill this duty when she did not explore two lines of questioning. First, she claims that the ALJ should have asked the Plaintiff about her

"interactive and relational difficulties." (Pl.'s Opening Br. 11–12, ECF No. 19.)[1] Second, the Plaintiff contends that it was necessary for the ALJ to ask the VE about the methodology the VE used to allocate the job numbers from the broader Office of Economic Statistics categories to the narrower Dictionary of Occupational Titles job categories. She maintains that the ALJ should have then inquired further into the details of the VE's methodology to determine if it had a rational basis.

The Seventh Circuit "generally upholds the reasoned judgment of the Commissioner on how much evidence to gather, even when the claimant lacks representation." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (first citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994); then citing *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)). Generally, only omissions that are considered significant will lead to a finding that the Commissioner failed to assist a pro se claimant in fully and fairly developing the record. *Id.* (citing *Luna*, 22 F.3d at 692). Significance, in turn, is predicated on whether the omission is prejudicial. *Id.* (citing *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997)). "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Id.* (quoting *Binion*, 13 F.3d at 246).

The Plaintiff does not contend that there were any gaps in the medical records that the

---

[1] The exact argument the Plaintiff poses is as follows: "In relation to the RFC issues mentioned in argument 'C', infra, the ALJ barely touched the surface, if at all, in inquiring as to Plaintiff's interactive and relational difficulties." (Pl.'s Opening Br. 11–12.) In section C, the Plaintiff's argument is that the ALJ erred by not including limitations that were set forth in section B. That section, in turn, refers to limitations that the Plaintiff contends were noted in a treatment plan, which references moderate problems with social functioning, moderate degree of work problems including disruptive behavior, and a significant degree of problems getting along with others. The Plaintiff cites to the record, pages 518, 546, 617, and 623. Although one of the cited pages contains similar wording, it is from a treatment plan dated November 15, 2016, after the July 14, 2016, hearing. In any event, the Court will address the Plaintiff's arguments regarding these limitations later in this Opinion.

ALJ should have discovered and filled. Although there were no medical records from late 2013 until May 2015, the ALJ noticed this gap and inquired if any records were missing from that time frame. The Plaintiff testified that she did not receive any treatment during that time because she did not have insurance. The ALJ referenced the most up to date record she had been provided, and the Plaintiff confirmed that those were the most recent records and that nothing was missing. The only additional evidence the Plaintiff maintains that the ALJ should have gathered about the Plaintiff's medical condition, then, was in the form of answers to questioning about the Plaintiff's ability to get along with others.

A review of the transcript reveals that the ALJ gave the Plaintiff ample opportunity to tell the ALJ what she believed were her barriers to employment. The Plaintiff identified her inability to stand for long periods of time as the most significant issue limiting her ability to work. (R. 111.) The ALJ also inquired whether the Plaintiff had any symptoms from mental conditions. The Plaintiff identified her depression, and the ALJ inquired into the treatment the Plaintiff was receiving. The ALJ also asked the Plaintiff to describe the specific symptoms that she experienced because of her depression. The Plaintiff responded,

> I actually was diagnosed when I was little with ADHA and posttraumatic stress disorder and depression. I have trouble sleeping at night as it is because of the posttraumatic stress disorder, but I don't think—I mean, I do [know my] depression is acting up because I don't have a job. It's just that nobody is listening to me, and I can't — with the physical element that I have, I have no way of working.

(R. 116–17.) Because the Plaintiff's answer was not responsive to the ALJ's question about the symptoms of her depression, the ALJ again asked the Plaintiff what symptoms she experienced due to her depression, and also inquired if the therapy was helping with those symptoms. Other questions touched on the Plaintiff's sleep, what she did during her waking hours, and her

7

previous work. When the ALJ asked the Plaintiff whether there was "anything else that you think I should know about in terms of either your physical health or your mental health that we haven't talked about here today?" she responded, "I don't believe so. . . . I believe you have everything on file that you need to know." (R. 120–21.) The Plaintiff never mentioned any difficulty in relating to other people as an impediment to work. In fact, her responses seemed focused on her physical limitation as the reason she could not maintain employment.

The transcript does not reveal that the ALJ's questioning resulted in a significant omission or prejudice to the Plaintiff and, thus, the Commissioner did not fail to assist the pro se claimant in fully and fairly developing the record. *Cf. Nelms*, 553 F.3d at 1098–99 (holding that the ALJ failed to adequately develop record where he did not question pro se claimant about recent medical history or make any attempt to gather additional records despite two-year evidentiary gap). The Plaintiff's argument to the contrary is based on nothing more than her speculation that additional testimony might have been obtained had the ALJ asked her specific questions about relating to others. The treatment records themselves were in the record, and part of the ALJ's review. The ALJ noted that the Plaintiff had been diagnosed with PTSD; major depressive disorder, recurrent, moderate; and borderline personality disorder. (R. 33.) The ALJ further mentioned the treatment notes from May, July, and August 2015. The Plaintiff has not presented an adequate ground for remand for failure to inquire about her interactive and relational difficulties.

The Plaintiff also maintains that, if she had been represented at the hearing, her counsel "would have ferreted . . . out" the VE's methodology "to determine the validity of the Step 5

national numbers." (Pl.'s Opening Br. 13–14.)[2] She asserts that the ALJ's failure to "go through all the required steps to establish a foundation for review" requires remand. (*Id.* at 14.) As stated above, the Plaintiff must show a significant omission that caused the Plaintiff prejudice.

The Commissioner bears the step-five burden of establishing that the claimant can, considering her RFC, age, education, and work experience, perform other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 416.912(g), 416.960(c). In making the step five determination, the ALJ generally relies on the Dictionary of Occupational Titles (DOT) for information about the typical characteristics of jobs as they exist in the economy. An ALJ is required to take administrative notice of job information contained in various publications, including the DOT, published by the Department of Labor. *See* 20 C.F.R. § 416.966(d)(1). The ALJ often also relies on testimony from a VE to "supplement the information provided in the *DOT* by providing an impartial assessment of the types of occupations in which claimants can work and the availability of positions in such occupations." *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

The Plaintiff has failed to show that the VE's testimony did not comport with the rules set forth in the Commissioner's Social Security Rulings, or that it was otherwise unreliable. Before the ALJ can rely on a VE's testimony, she must inquire about any possible conflict between the VE's testimony and information provided in the DOT. *Prochaska v. Barnhart*, 454 F.3d 731, 735 (7th Cir. 2006) (noting that SSR 00-4p unambiguously sets out the ALJ's

---

[2] Whether counsel would have asked particular questions is not the standard by which to determine whether the ALJ failed to develop the record fully and fairly. Additionally, it is not a foregone conclusion that counsel would have inquired about the VE's methodology. This Court has read countless transcripts in which there was no questioning along these lines, despite the claimant having legal representation.

affirmative duty to inquire about conflicts ). Here, the ALJ made the required inquiry. (R. 128–29.) The Plaintiff, however, asserts that more was required to adequately develop the record.

In complaining that the ALJ did not inquire as to the methodology the VE used to allocate the job numbers from the broader Office of Economic Statistics categories to the narrower DOT job categories, the Plaintiff cites to *Alaura v. Colvin*, 797 F.3d 503, 507–08 (7th Cir. 2015), which expressed concern with the source and validity of statistics that VE's testify to at disability hearings. However, "[w]hen no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion." *See Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002); *see also Willis v. Berryhill*, 3:16-CV-142, 2017 WL 3297778, at *4 (N.D. Ind. Aug. 1, 2017) ("While it is correct that the Seventh Circuit has questioned the accuracy of job statistics from vocational experts, the Seventh Circuit has not overruled its precedent holding that the ALJ is entitled to accept a vocational expert's testimony where no one questions the vocational expert's foundation or reasoning.") (quotations and citations omitted); *Chavez v. Berryhill*, 1:16-CV-314, 2017 WL 3124432, at *5 (N.D. Ind. July 24, 2017) ("Without any holding reversing *Donahue*, Courts have refused to remand solely for challenges to VE methodology, citing a lack of guidance from the Seventh Circuit."); *Adamec v. Berryhill*, 15 C 11811, 2017 WL 1196920, *6 (N.D. Ill. March 31, 2017) ("[T]he Seventh Circuit's repeated criticism of the use of the DOT in VE testimony, while pointed, was merely dicta and does not merit remand."); *Weir v. Colvin*, No. 15-CV-532, 2016 WL 4083524, at *3 (W.D. Wis. Aug. 1, 2016) ("[Plaintiff's] argument [about VE methodology] is well taken. But [plaintiff's] criticism of the VE's methodology is not a basis for remand until appellate precedent

instructs that relying on the methodology is reversible error.").

The Plaintiff has offered no argument, nor made any showing, concerning what an inquiry about the VE's methodology might have revealed about the number of available jobs or how it would have otherwise altered the outcome of the case. She offers no data to suggest that the VE's numbers were not accurate.[3] Without any such evidence, the absence of an inquiry about methodology cannot be considered a significant omission that prejudiced the Plaintiff.

**B.    Residual Functional Capacity**

According to the ALJ's decision, she accounted for the Plaintiff's pain and functional limitations when arriving at the RFC. "For instance, exertional, postural, and environmental restrictions were incorporated in the residual functional capacity to accommodate the claimant's obesity, her history of pulmonary embolism, and her alleged pain, including pain from deep venous thrombosis and left knee pain." (R. 34.) To account for her "reported need to change positions," the RFC "provides for the option to alternate between sitting and standing and vice versa every 60 minutes." (*Id.*) Because of "her history of deep vein thrombosis" and her "difficulty with crouching and squatting," the ALJ incorporated a restriction precluding the Plaintiff "from having to maintain a static position for more than 60 seconds when crouching or

---

[3] Any data or reasoning underlying the VE's bottom line must be "available on demand" so that the claimant may test the reliability of the VE's testimony. *McKinnie v. Barnhart*, 368 F.3d 907, 910–11 (7th Cir. 2004) (quoting *Donahue*, 279 F.3d at 446). No rule or practice requires a VE to produce the evidence if it is not requested. To that end, the Seventh Circuit has "refuse[d] to endorse a system that drags out every Social Security hearing to an interminable length." *Britton v. Astrue*, 521 F.3d 799, 804 (7th Cir. 2008) (stating that the "'available on demand'" rule . . . can be applied to achieve the proper balance between the needs of the claimant to effectively cross-examine the VE and the needs of the Commissioner to hold efficient hearings"). The Plaintiff has cited no legal authority requiring an ALJ to make the inquiry on behalf of an unrepresented claimant.

11

squatting." (*Id.*) Based on the Plaintiff's "moderate limitations in concentration, persistence, or pace and her subjective complaints of problems with memory," the ALJ found that she was "limited to understanding, remembering, and performing simple tasks, making simple decision, and adapting to routine changes in the workplace." (*Id.*)

The Plaintiff asserts that the ALJ committed two errors in assessing what the Plaintiff could still do, in light of her impairments. First, she maintains that the ALJ failed to give controlling weight to the combined opinion of the Plaintiff's treating psychiatrist and psychologist. Second, she claims that her RFC, and the hypothetical question to the VE, should have included limitations that related to concentration, persistence, and pace and to her interaction problems.

The RFC provides that the Plaintiff "can understand, remember, and perform simple tasks, make simple decisions, and adapt to routine changes in the workplace." (R. 30.) The ALJ's decision states that these limitations were based on the Plaintiff's "moderate limitations in concentration, persistence, or pace and her subjective complaints of problems with her memory." (R. 34.) Having reviewed the ALJ's written decision, the Court identifies the following as the purported basis for finding that the Plaintiff had moderate limitations in these areas:

> The claimant testified that since January of 2016 she was no longer able to help her uncle with household chores and tasks due to her recurrent blood clots (Testimony at 1:28:01). Her physical impairments appear to be her primary limitation in this area. Although she admitted to memory problems in May of 2016 (Ex. B17/4-6). However, she also testified that her free time included activities such as coloring, crafts, and puzzle books. (Testimony at 1:38:20). Therefore, the claimant has moderate limitations in concentration, persistence, or pace.

(R. 29.) This analysis does not provide a logical bridge for finding a moderate limitation. If that were all that was in the record, the Plaintiff would have failed to meet her burden to show that

12

the RFC should include any limitations for concentration, persistence, or pace. As such, there would be no basis for remand.

The Plaintiff, of course, wants these limitations to be found. Her disagreement with the ALJ's decision is that the RFC did not adequately describe how these limitations impacted her ability to work. If the Plaintiff indeed has moderate limitations in concentration, persistence, or pace, she has a valid point. An RFC or hypothetical that refers to "simple tasks" is not sufficient to account for the limitations in concentration, persistence, or pace. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014); *see also Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015). That is because a reference to simple tasks is a reference to the skill level involved in learning a task. *Varga*, 749 F.3d at 814. "[W]hether work can be learned in this manner is unrelated to the question of whether an individual with mental impairments—e.g., with difficulties maintaining concentration, persistence, or pace—can perform such work." *Id.* Thus, the Seventh Circuit has "repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace." *Moreno v. Berryhill*, — F.3d —, No. 17-1954, 2018 WL 914954, at *6 (7th Cir. Feb. 16, 2018) (quoting *Yurt*, 758 F.3d at 858–59).

To show that these limitations are warranted, the Plaintiff argues that the ALJ should have given controlling weight to the combined opinion of the Plaintiff's treating psychiatrist and psychologist, identified as Jason Cook Psy.D and Larry Lambertson, M.D. (Pl.'s Opening Br. 14.) The Plaintiff argues that these providers issued limitations for the Plaintiff on May 27, 2015, in their roles on her mental health treatment team. She further alleges that this joint opinion was

not recognized or properly weighed. The Plaintiff identifies the following as the limitations that were imposed:

> The individual is having some moderate problems with her social functioning. Problems with relationships currently interfere with functioning in other life domains.
>
> Significant problems with decision making exists. Individual may be struggling with thinking through problems, anticipating consequences or concentrating.
>
> The individual is marginally involved in her recovery or she is minimally involved in treatment.
>
> A moderate degree of work problems including disruptive behavior and/or difficulties with performing required work is indicated. Supervisors likely have warned individual about problems with her work performance or although not working. The individual seems interested in doing so, but may have some anxiety about working.
>
> Individual is having problems with sleep. Sleep is often disrupted and individual seldom obtains a full night of sleep.
>
> The person does not take medication(s) prescribed for management of underlying medical conditions and her underlying medical conditions are not well controlled.

(*Id.* at 15.) The Plaintiff cites to record pages 518, 546, 547, 617 and 623 in support. None of the cited pages support the Plaintiff's contention. The closest is the record contained on page 617. It is for a plan dated November 15, 2016 (after the date of the hearing before the ALJ), but it at least identifies Cook and Lambertson as part of the treatment team. The client limitations do not exactly mirror those listed above, but there is some overlap, including moderate problems with social functioning and problems sleeping.

The Court is left to speculate how the Plaintiff believes the ALJ should have weighed the treatment plan, or used it to define functional limitations for the RFC. It is not even clear that the list of limitations can be considered the opinion of a treating source so that the ALJ was required

14

to analyze it as such under the regulations. For her part, the ALJ did discuss the treatment notes from May 2015 and beyond. (R. 33) (referencing Ex. B10F).) However, despite this discussion, it is not clear how the ALJ handled the statements in the record regarding these limitations. For example, the limitations would suggest that the Plaintiff has difficulty getting along with others, including in the workplace, yet there is no limitation in the RFC to account for this, or, alternatively, an explanation why such a limitation is not necessary. The ALJ points to the Plaintiff's statements to her treatment team, and to observations from the team during a mental status exam, but the ALJ's decision does not connect these to the limitations that are cited within these same records.

With respect to the Plaintiff's limitations due to her mental health, the ALJ has not "explain[ed] her decision in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). More is required to create the logical bridge between the evidence and the ALJ's conclusions regarding concentration, persistence, and pace. If these limitations are supported by substantial evidence in the record, the RFC must be revised to adequately capture the Plaintiff's limitations in concentration, persistence, and pace.

## CONCLUSION

For the reasons stated above, the decision of the Commissioner is REVERSED and the matter is REMANDED for further proceedings.

SO ORDERED on March 12, 2018.

                                      s/ Theresa L. Springmann
                                      CHIEF JUDGE THERESA L. SPRINGMANN
                                      UNITED STATES DISTRICT COURT